IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DALE LOEPKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **07-830-DRH** |
| | ) | |
| **MICHAEL J. ASTRUE[1],** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This report and recommendation is respectfully submitted to Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Pursuant to 42 U.S.C. § 405(g), plaintiff Dale Loepker, represented by counsel, is before the Court seeking review of the final decision of the Social Security Administration denying his Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423, or even a Period of Disability (POD) pursuant to 42 U.S.C. § 416(i). **(Doc. 2).** In addition to submitting the administrative record **(Doc. 8 (hereinafter "R."))**, plaintiff and defendant have fully briefed their positions. **(Docs. 11 and 16).**

Plaintiff Loepker's physical ailments are not in dispute, per se. Rather, this appeal centers around the sufficiency of the evidence and legal analysis by the Administrative Law Judge.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is, therefore, automatically substituted as the defendant in this civil action, and no further action is necessary to continue this case.

1

## Overview of the Evidence
## and the Relevant Procedural History

In June 2004, plaintiff applied for DIB, alleging the onset of disability as of January 29, 2003. **(R. 61-63).** As plaintiff's brief summarizes:

> The plaintiff, Dale Loepker, was born on January 24, 1958. *R15, R445*. At the time of the hearing plaintiff lived in a trailer alone. *R11, R451*. Plaintiff is a high school graduate and took one year of college. *R*15-16. Plaintiff had a steady work history until his alleged onset date of disability of January 29, 2003. *Id.* Plaintiff worked as a janitor for the Department of Agriculture from December 17, 1984, through July 1, 1994. *R10-11; 77, R447.* Plaintiff then worked as a building and grounds maintenance with the Department of Agriculture from July 1, 1994, to October 16, 2001. *R77, R447.* Plaintiff was unemployed from October 16, 2001, to April 15, 2002. *Id.* Plaintiff's last worked as a railroad car apprentice from April 15, 2002 until January 29, 2003. *Id., R447.* Plaintiff has been unable to perform any substantial gainful employment since January 29, 2003. *Id.*
>
> Plaintiff's physical problems began in 1995. Plaintiff testified that he was injured in 1995 while working at the Department of Agriculture. *R445*. Subsequent to this injury plaintiff testified that he had a two level fusion back surgery at L4-L5. *Id.* Plaintiff then testified that he was injured again at work in 2003 which required a two level fusion in his neck. *R446.* At the hearing the plaintiff testified that he suffered compression fractures at T11 and T12 following an automobile accident in 2004. *Id.*

**(Doc. 11, pp. 3-4).**

Administrative Law Judge ("ALJ") Mitchell Stevens found that plaintiff had the following severe impairments: status-post interbody fusion at L4-L5 and L5-S1, and at C5-C6 and C6-C7, status-post mild fractures at T11-T12, and mild asthma controlled by medication, but no impairment of combination of impairments that meets or equals any of the presumptively disabling ailments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1, Pt. A. **(R. 15).** Although incapable of performing his past heavy work, plaintiff was found to have the residual functional

2

capacity for a full range of light and sedentary work[2], *except* for standing or walking more than three hours and sitting more than seven hours out of an eight hour work day; doing more than occasional balancing, stooping, kneeling or crawling; or doing climbing or crouching. **(R. 15).** Based on his age, education and vocational history, and taking into consideration the vocational testimony regarding possibly available jobs, ALJ Stevens concluded plaintiff was not disabled. **(R. 15-16).** In October 2007, the Appeals Council denied plaintiff's request for review. **(R. 4-6).**

## The Standard of Review

To be entitled to disability insurance benefits the claimant must establish that he is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." **42 U.S.C. § 423(d)(1)(A).**

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." **20 C.F.R. § 404.1567(b).** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." **20 C.F.R. § 404.1567(a).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***See Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** *see also* **20 C.F.R. § 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether plaintiff is in fact disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. ***See Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence. ***Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993).**

4

A negative answer at any point in the five step analytical process, other than at the third step, stops the inquiry and leads to a determination that the claimant is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984). If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment (step three). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at step four to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

## Relevant Documentary Evidence

According to an evaluation by neurologist Dr. Robert Grubb, plaintiff injured his back at work in February 1995, resulting in a disc protrusion at L4-L5, with no definite nerve root compression. **(R. 322).** Plaintiff indicated that sitting caused pain, which was relieved by standing. **(R. 322).** Only aspirin was required for pain relief. **(R. 322).** Although surgery was not recommended, steroid injections were prescribed. In any event, by April 1996 plaintiff and the doctor agreed that plaintiff could return to work and perform his job without difficulty. **(R. 322).** A fusion at L4-L5 and L5-S1 was ultimately performed.

On January 29, 2003, plaintiff was lying down under a rail car when a cushion unit weighing about a ton fell on his chest. **(R. 122).** X-rays and an MRI scans evidenced a broken rib and cervical disc ruptures at C5-C6 and C6-C7; a solid fusion at L4-L5 and L5-S1, but no other abnormalities. **(R. 129).** In early March, pulmonary consultant Dr. V.S. Mohan found that plaintiff had chronic bronchitis due to smoking, but breath sounds were normal by the end of March. **(R. 324-325).** Orthopedist Dr. George Schoedinger's March 3, 2003, report that

5

although no tenderness in the neck and lumbar spine was appreciated, plaintiff's range of motion in both areas was decreased. **(R. 123).** The doctor attributed the low back pain to irritation of scarring in the area of the prior fusion and degenerative changes above the level of fusion. **(R. 124).** Plaintiff had a full range of motion in all limbs. **(R. 123).** Physical therapy was prescribed, and plaintiff was advised to stay off work and maintain a low level of weight. **(R. 124).**

By April 2003, plaintiff and Dr. Schoedinger agreed that plaintiff should refrain from work that would unduly strain his neck and low back. **(R. 130).** Plaintiff was precluded from sitting or engaging in flexion activities, such as driving for any prolonged time. **(R. 131).** Plaintiff continued to treat with Dr. Schoedinger and undergo physical therapy. **(R. 131-137).** In August 2003, plaintiff underwent a cervical discectomy and interbody fusion at C5-C6 and C6-C7. **(R. 158).**

By October 2003– one month post cervical fusion– preoperative symptoms had disappeared, plaintiff had no low back complaints, and the doctor felt plaintiff was doing well and should maintain a high level of activity. **(R. 138).** Nevertheless, Dr. Schoedinger ordered plaintiff to stay off work. **(R. 138).**

Dr. Schoedinger's notes from December 2003 reflect that plaintiff's neck symptoms had markedly improved, and that plaintiff had only occasional neck stiffness with motion or changes in the weather, and no upper limb complaints. **(R. 140).** Similarly, low back pain was experienced only upon activity requiring flexion. **(R. 140).** An MRI of the lumbar spine showed no focal disc protrusion. **(R. 142).** An MRI of the cervical fusion showed a stable fusion and no evidence of other abnormality. **(R. 143).** Plaintiff was again advised to remain off work. **(R.**

6

**143).**

Plaintiff returned to see Dr. Schoedinger three months later, in March 2004. Plaintiff had decided to return to school, as he perceived that he would not be able to return to unrestricted heavy industrial activity; the doctor agreed. **(R. 144).** At that time, plaintiff experienced stiffness with activity requiring any degree of lifting or full flexion of the lumbar spine. **(R. 144).** Plaintiff was told to return in the usual three month interval. **(R. 144).**

Plaintiff was in a serious motor vehicle accident on March 14, 2004. He had a lacerated spleen and fractures at T11 and T12, but was discharged on March 19th. **(R. 189-190 and 192-194).** He returned to Dr. Schoedinger April 6, 2004, complaining of mid back pain. **(R. 145).** Plaintiff was ambulatory and had no lower limb or neck symptoms. **(R. 145).** Plaintiff has a compression fracture at the superior end plates of T11 and T12. **(R. 145 and 148).** Plaintiff was asymptomatic, so no treatment was recommended, and plaintiff was told to remain off work, avoid lifting, and increase activity as tolerated. **(R. 146).** Ultram was prescribed for pain. **(R. 146).** One month later, the fracture at T12 was deemed healed, the fracture at T11 was healing, and there was no change at the fusion site. **(R 148-149).** Dr. Schoedinger opined that plaintiff was disabled from the standpoint of any and all gainful employment which imposes any significant stress on plaintiff's low back, due to lower lumber disc ruptures. **(R. 149).** Plaintiff was directed to remain off work. **(R. 149).**

In June 2004, three months after the motor vehicle accident, Dr. Schoedinger noted that plaintiff had tenderness in his ribs, depending on activity. **(R. 153).** Plaintiff asked the doctor if he could begin a "vigorous" exercise program, which the doctor approved. **(R. 153).** Dr. Shoedinger opined that plaintiff was unemployable at any activity requiring significant use of his

7

neck or low back, or which imposes undue stresses on either of those areas. **(R. 153)**.

In June 2004, when plaintiff applied for benefits, he indicated that if he stands for more than a few minutes, he must then lie down for at least 30 minutes to take the weight off his spine and relieve the pain, even when he is taking pain medication. **(R. 82)**. Plaintiff described having insomnia and having to sleep in a recliner. **(R. 83)**. Plaintiff also indicated that he sometimes used a cane or held on to furniture or counters to walk. **(R. 83)**. At that time, plaintiff's neck was stiff, and he found his situation depressing. **(R. 84)**.

A residual functional capacity assessment by a consulting agency physician, Dr. Anthony Agatucci, based on the medical records through June 2004, indicates plaintiff was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds; standing, walking and sitting for six hours out of an eight hour day. **(R. 199-200)**. The doctor noted that the cervical spine fusion had cured plaintiff's headaches and upper limb complaints, and as of March 8, 2004, there was no weakness, sensory or reflex loss. **(R. 200)**. The March 14, 2004, motor vehicle injuries and resulting mid back complaints had diminished by June 2004. **(R. 200-201)**. Postural limitations were noted– frequently impacting plaintiff's ability to climb and balance. **(R. 201)**. Plaintiff's hypertension was considered controlled with medication. **(R. 206)**.

In February 2005, plaintiff began treating with Dr. Alberto Butalid. Dr. Butalid noted depression at that time, but no treatment was prescribed. **(R. 427)**. October 2005 treatment notes reflect that plaintiff's hypertension was controlled; although there was no shortness of breath, an inhaler was prescribed for plaintiff's history of breathing difficulty; mid and low back pain with changes in the weather was recorded. **(R. 425)**. Plaintiff's insomnia was noted– he reported only sleeping three to four hours per night. **(R. 422)**. At that time, plaintiff was taking

8

Darvocet as needed, and Ibuprofen.  **(R. 422).**

In March 2007, orthopedist Dr. Jack C. Tippett evaluated plaintiff.  **(R. 429-431).** Plaintiff reported that he was always in pain– low back pain and left leg pain.  **(R. 429).** Plaintiff also complained of depression, nervousness and difficulty sleeping.  **(R. 429).**  The doctor observed that plaintiff could rise from a chair fairly easily; he walked without a limp; does not require a cane or crutch; could stand on his toes and heels; had difficulty squatting; could only bend to touch his ankles; could get on and off the exam table without help.  **(R. 430).** Plaintiff's neck was mildly tender and the range of motion limited.  **(R. 430).**  Similarly, plaintiff"s mid and low back were tender at the midline, and range of motion was limited.  **(R. 430).**  Upper and lower extremities were fine.  **(R. 430).**  Plaintiff was deemed "healed" relative to the discectomy and fusion at L4-L5 and L5-S1, discectomy and fusion at C5-C6 and C6-C7, post compression fractures at the T11 and T12 vertebrae.  **(R. 431).**  Dr. Tippett concluded plaintiff could lift and carry 11-20 pounds occasionally, sit, stand and walk for 15 minutes at a time, sit for a total of seven hours, stand for two hours and walk for two hours.  **(R. 434-435).** Plaintiff had no hand restrictions, but could only use foot controls occasionally due to leg pain.  **(Doc. 435).**  No activities were limited.  **(R. 439).**

Vocational expert Dr. James E. Israel reviewed the record evidence and replied to written interrogatories.  **(R. 117-118).**  Dr. Israel confirmed that all of plaintiff's prior work was classified as unskilled and/or semi-skilled heavy work.  **(R. 118).**  A return to that level of work was ruled out.  **(R. 118).**  However, other substantial work activity within the sedentary and light range was deemed possible: assembler (1,000 jobs); production inspector/checker (500 jobs); and order clerk (1,000 jobs).  **(R. 118).**

9

## Plaintiff's Testimony

In November 2006, plaintiff Loepker testified before ALJ Stevens. **(R. 441-455).** Plaintiff stated that a small amount of work causes a lot of pain. **(R. 447).** According to plaintiff, he can only stay in one position for 30 minutes. **(R. 447).** Plaintiff does not think that there is any type of work that he can perform, at least not without a lot of rest in between activities. **(R. 448).** Plaintiff has tried to work on the family farm, cutting grass and driving a tractor, but his body "locked up." **(R. 448).** Plaintiff also tried helping his brother renovate an apartment, but he could not last for long at that work. **(R. 448).** However, plaintiff testified that he lives by himself in a trailer and does all of his own cooking, cleaning, laundry and shopping, and he is able to drive five minutes to town, but longer trips prove difficult. **(R. 451-452).** Plaintiff is still able to attend church. **(R. 452).** And, plaintiff thought he could still walk a mile and occasionally lift up to 25 pounds. **(R. 453).**

Plaintiff testified that he takes Darvocet periodically, as well as Aleve and Ibuprofen. **(R. 453 and 454).** He also sleeps in a recliner, but still has sleeping difficulties. **(R. 447).** When questioned by the ALJ about the paucity of medical evidence after June 2004, plaintiff confirmed that he had only seen Dr. Butalid a few times. **(R. 450).** Plaintiff asserted that he wanted to, but he could not afford to see the doctor.[3] **(R450).**

## ALJ Stevens' Decision

---

[3] ALJ Stevens found that cost was apparently <u>not</u> a factor to plaintiff's sporadic medical visits after June 2004. **(R. 14).** Plaintiff does not take issue with that finding, despite testimony to the contrary. There is also no other support in the record for the assertion that cost was an impediment.

ALJ Stevens recognized plaintiff's history of back pain since 1995 and the initial discectomy and fusion. **(R. 11).** The ALJ noted that after plaintiff's January 29, 2003, injury and September 2003 fusion, a December 2003 MRI showed a stable fusion. **(R. 12).** The March 2004 motor vehicle accident was characterized as a "temporary aggravation" of plaintiff's back pain, and the ALJ observed that by April 2004 plaintiff was asymptomatic. **(R. 12).**

The ALJ highlighted the fact that prior to the September 2003 fusion, and again in May 2004, Dr. Schoedinger *only* directed plaintiff to avoid work that would cause stress on his low back or neck. **(R. 12).** In June 2004, plaintiff asked for and was granted permission to engage in a "vigorous" exercise program. **(R. 12).** The ALJ further observed that subsequent treatment was very limited; beginning in February 2005, Dr. Butalid periodically treated plaintiff, albeit for limited reasons, e.g. for asthma; depression was noted, but no specific treatment was prescribed. **(R. 12).** Similarly, the ALJ cited Dr. Tippett's March 2007 opinion that, although plaintiff was impaired, he could stand and walk for three hours and sit for seven hours during an eight hour day. **(R. 12).**

Relying on Dr. Tippett's residual functional capacity assessment, the ALJ concluded plaintiff could perform light work, albeit with certain limitations, and sedentary work. **(R. 13).** The ALJ did abandon Dr. Tippett's opinion that plaintiff could only sit, stand or walk for 15 minutes at a time. **(R. 13).** The ALJ found "no persuasive medical reason" for that degree of limitation. **(R. 13).** The ALJ stressed that no examining physician had stated or implied that plaintiff was disabled or totally incapacitated, and by plaintiff's own account, he could sit for 30 minutes and probably walk a mile. **(R. 13).** ALJ Stevens observed that Dr. Schoedinger only precluded heavy work and work that would impose unusual degrees of stress on the back and

11

neck. **(R. 13).**

With respect to plaintiff's miscellaneous complaints, the ALJ noted that there was no evidence that plaintiff's hypertension imposed any limitation, and that plaintiff's shortness of breath was short lived, as of October 2005. **(R. 13-14).** Isolated mentions of depression were similarly discounted, as plaintiff was not prescribed medication and due to the lack of any medical evidence of related impairment. **(R. 14).**

ALJ Stevens concluded plaintiff was not credible regarding his claims of impairment. **(R. 14).** The ALJ highlighted the fact that plaintiff did not seek regular medical attention after June 2004. **(R. 14).** The ALJ opined that plaintiff did not seek treatment because he did not feel that he needed treatment. **(R. 14).** The ALJ also concluded there was a lack of the medical signs typical of chronic, severe musculoskeletal pain. **(R. 14).** The ALJ thought plaintiff's limitations were much more by choice, rather than by medical proscription. **(R. 14).** The ALJ also cited plaintiff's testimony about his usual chores and that he had helped his brother renovate an apartment. **(R. 14).**

Based on his "younger" age, high school education (with no transferable skills), and residual functional capacity for at least light-sedentary work, the ALJ found that, in accordance with Rule 202.21, plaintiff is not disabled. **(R. 14-15).**

## Issues

Plaintiff asserts the following errors:

1. The ALJ's decision is not supported by substantial evidence;

2. The ALJ based his decision on a preponderance of the evidence, which is the wrong standard; and

3. The ALJ ignored, discounted and improperly valued the evidence– he "played doctor," discounted evidence without an adequate explanation, failed to evaluate Dr. Schoedinger's extensive treatment, discounted Dr. Butalid's findings regarding depression; failed to evaluate Dr. Tipplett's report; and over-valued plaintiff's chores and minor work attempts.

**(Doc. 11).**

## Analysis

### The Applicable Legal Standards

As a preliminary matter the Court must clarify that, as set forth above, in the standard on review before this Court, the ALJ's decision must be supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).** In contrast, the ALJ utilizes a preponderance of the evidence standard, the default standard in civil and administrative proceedings. ***Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996).** Therefore, contrary to plaintiff's argument, the ALJ's reference to the preponderance of the medical and other evidence being inconsistent with plaintiff's allegations of disability **(R.11)** is entirely proper.

### Sufficiency of the Evidence

Insofar as plaintiff argues that there is not substantial evidence to support the ALJ's conclusion that plaintiff is disabled, the three medical doctors' opinions make clear that there is no 12-month period in which plaintiff was medically precluded from all work, as plaintiff

suggests.[4]

Rather, plaintiff's treating physicians and the agency physician who reviewed the record precluded only certain levels of exertion and/or certain movements.

After plaintiff injured his lower back in 1995, he returned to heavy labor without difficulty, until January 29, 2003, when he injured his cervical spine. In April 2003, Dr. Schoedinger and plaintiff agreed that plaintiff should refrain from work that would unduly strain his neck and low back– *not all work*. **(R. 130).** Plaintiff was precluded from sitting or engaging in flexion activities, such as driving for any prolonged time. **(R. 131).** That was before the August 2003 cervical discectomy and interbody fusion at C5-C6 and C6-C7. **(R. 158).** By October 2003, one month post-fusion, preoperative symptoms had disappeared, plaintiff had no low back complaints, and the doctor felt plaintiff was doing well and should maintain a high level of activity. **(R. 138).** Dr. Schoedinger's notes from December 2003 reflect that plaintiff's neck symptoms had markedly improved, and that plaintiff had only occasional neck stiffness with motion or changes in the weather, and no upper limb complaints. **(R. 140).** Similarly, low back pain was experienced only upon activity requiring flexion. **(R. 140).** Although Dr. Schoedinger continued to recommend that plaintiff remain off work, it must be kept in mind that plaintiff's job was deemed heavy exertional activity. Dr. Schoedinger's analysis of plaintiff's condition, and the supporting medical tests, is consistent with limiting the range of work plaintiff could perform.

---

[4] Neither party takes issue with the medical test results and imaging that underlie the doctors' opinions, so the Court focuses primarily on the doctors' notes and reports, which offer interpretation and summary of the medical evidence.

14

Even after the March 2004 motor vehicle accident, plaintiff's condition had not worsened so as to require additional medical treatment, only rest and a return to activity as tolerated. **(R. 146).** By May 2004 Dr. Schoedinger opined that plaintiff was disabled from the standpoint of any and all gainful employment which imposes any significant stress on plaintiff's low back, due to lower lumber disc ruptures. **(R. 149).** Again, not all levels of exertional activity were precluded. By June 2004, plaintiff himself asked if he could return to a "vigorous" exercise program. **(R. 153).** Not only did Dr. Schoedinger agree that plaintiff could perform vigorous exercise, he opined that plaintiff was unemployable at any activity requiring significant use of his neck or low back, or which imposes undue stresses on either of those areas. **(R. 153).** At this same time, Dr. Agatucci considered plaintiff capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing, walking and sitting for six hours out of an eight hour day, albeit with certain postural limits. **(R. 199-201).** These evaluations correspond with the exertional requirements of light and sedentary work. **(*See* p. 3, fn. 2).** Thus, as of June 2004, the evaluations of plaintiff's degree of impairment are consistent.

In February 2005, Dr. Butalid recorded that plaintiff experienced mid and low back pain with changes in the weather **(R. 425)**, which cannot reasonably be said to alter plaintiff's exertional status. Plaintiff was not experiencing any shortness of breath, although he was prescribed an inhaler; similarly, his hypertension was controlled without plaintiff even taking his medication. **(R. 425)**. Depression was noted, but it could not have been significant, as there is no suggestion that specific treatment was prescribed. **(*See* R. 427; *see also* Doc. 11, p. 11).** Although plaintiff's difficulty sleeping was recorded, no suggested negative impact was noted, nor was any specific treatment prescribed. Darvocet and Ibuprofen were prescribed on an as

15

needed basis. **(R. 422).** Thus, Dr. Butalid's evaluation has little or no impact on the aforementioned residual functional capacity for light and sedentary work.

Although Dr. Tippett's March 2007 evaluation included plaintiff's complaints of low back and left leg pain, depression, nervousness and difficulty sleeping **(R. 429)**, the doctor's opinion relative to residual functional capacity was consistent with, although not quite as generous as, Dr. Agatucci's evaluation. Dr. Tippett concluded plaintiff could lift and carry 11-20 pounds occasionally, sit, stand and walk for 15 minutes at a time, sit for a total of seven hours, stand for two hours and walk for two hours. **(R. 434-435).** Plaintiff had no hand restrictions, but could only use foot controls occasionally due to leg pain. **(Doc. 435).** Thus, a range of light and sedentary work would still not be precluded. **(*See* p. 3, fn. 2).** Dr. Israel's vocational assessment, based on a review of the record which included the aforementioned evaluations, reflects that there are a significant number of sedentary and light jobs within the greater St. Louis economy that could be performed by a person with plaintiff's profile. **(R. 118).**

Plaintiff presents a much more dire picture of his degree of impairment. Social Security Rule 96-7p requires an ALJ to specifically articulate the rationale for any credibility determination relative to the consideration of pain and its functional effects. ***Brindisi v. Barnhart*, 315 F.3d 783 (7th Cir. 2003).**

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

16

> reviewers the weight the adjudicator gave to the individual's statements
> and the reasons for that weight.

***Brindisi*, 315 F.3d at 787 (quoting from SSR 96-7p).**

ALJ Stevens concluded plaintiff was not credible regarding his claims of impairment. **(R. 14).** The ALJ highlighted the fact that plaintiff did not seek regular medical attention after June 2004. **(R. 14).** The ALJ opined that plaintiff did not seek treatment because he did not feel that the needed treatment. **(R. 14).** The ALJ also concluded there was a lack of the medical signs typical of chronic, severe musculoskeletal pain. **(R. 14).** The ALJ thought plaintiff's limitations were much more by choice, rather than by medical proscription. **(R. 14).** The ALJ also cited plaintiff's testimony about his usual chores and that he had helped his brother renovate an apartment. **(R. 14).**

An ALJ cannot "play doctor;" the ALJ should not substitute his or her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. ***Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).** However, the ALJ, not any doctor, makes the final decision about whether a claimant is disabled. *See* **20 C.F.R. § 404.1527(e);** ***Johansen v. Barnhart,* 314 F.3d 283, 288 (7th Cir. 2002).** Plaintiff is grasping at straws. Each of the aforementioned statements by the ALJ is supported by the medical evidence, which has been set forth above and already analyzed in detail. Plaintiff's November 2006 testimony is contrary to the aforementioned medical records and evaluations. Plaintiff testified that he could only stay in one position for 30 minutes and that a small amount of work caused a great deal of pain and necessitated rest between bursts of activity. **(R. 447-448).** Yet, plaintiff also testified he attended church and did all of his own shopping, cooking, cleaning and the like, and that he

17

helped his brother renovate an apartment. **(R. 448, 451-452).** Plaintiff also thought he was capable of lifting up to 25 pounds and walking one mile. **(R. 452-453).** When the ALJ questioned plaintiff regarding his lack of treatment after June 2004, plaintiff acknowledged that he had only seen Dr. Butalid a few times. **(R. 450).** Thus, the ALJ had obvious cause to not credit plaintiff's testimony regarding the degree of his impairment, and his proffered explanation sufficiently highlights his rationale for doing so.

There is clearly substantial evidence in the record to support the ALJ's residual functional capacity assessment; in fact, the credible evidence is consistent. Consequently, based on plaintiff's "younger" age, high school education (with no transferable skills), and residual functional capacity for light-sedentary work, Rule 202.21 dictates a finding that plaintiff is not disabled. **(R. 14-15).** There is no 12-month period within which plaintiff was not capable of a limited range of sedentary work.

Plaintiff argues that the ALJ failed to build a logical bridge between the evidence and his conclusions. Essentially, plaintiff contends the ALJ cherry-picked and mischaracterized evidence, under-valuing some evidence and over-valuing other evidence. The "substantial evidence" standard does not require the ALJ to address every piece of evidence in his decision; "he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." ***Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).** As discussed above, the medical evidence and physicians' opinions are generally consistent, so plaintiff's argument that various pieces of evidence were under- or over-valued is not well taken. The only truly contradictory evidence is plaintiff's testimony, which is internally inconsistent and contrary to the medical evaluations.

**Recommendation**

For the aforestated reasons, the Commissioner's decision denying plaintiff Dale Loepker's application for Disability Insurance Benefits or a Period of Disability should be affirmed in all respects, as the decision is supported by substantial evidence and properly articulated by ALJ Stevens' written opinion.

**SUBMITTED: January 22, 2009**

                                            **s/ Clifford J. Proud**
                                            **CLIFFORD J. PROUD**
                                            **U. S. MAGISTRATE JUDGE**

**Notice of Response Deadline**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **February 9, 2009**. No further extensions will be granted.